NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RANDY KARRY, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA,
*Respondent*,

VEOLIA TRANSPORTATION SERVICES, INC.,
*Respondent/Employer*,

OLD REPUBLIC INS. CO./SEDGWICK CLAIMS
MANAGEMENT SERVICES, *Respondent Carrier.*

No. 1 CA-IC 14-0054
FILED 1-27-2015

Special Action – Industrial Commission
ICA Claim No. 20131-990262
Carrier Claim No. 30130847374-0001
The Honorable Suzanne S. Marwil, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Randy Karry, Phoenix
*Petitioner*

Klein Doherty Lundmark Barberich & La Mont, PC, Tucson
By Eric W. Slavin
*Counsel for Respondent Employer & Respondent Carrier*

## MEMORANDUM DECISION

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Michael J. Brown joined.

**O R O Z C O**, Judge:

**¶1**         This is a special action review of an Industrial Commission of Arizona (ICA) award for a noncompensable claim.  For the reasons that follow, we affirm the ruling of the Administrative Law Judge (ALJ).

### FACTS AND PROCEDURAL HISTORY

**¶2**         Randy Karry received employment training from respondent Veolia Transportation Services (Veolia) to become a bus driver.  In administering a "final driving test," Veolia had several trainees take turns driving a bus in downtown Phoenix.  During one test, a trainee (not Karry) collided with a vehicle while attempting to make a left turn.  When the accident occurred, Karry was seated somewhere on the bus as a passenger. Donald Bremner, who conducted the final driving tests for Veolia and was also a passenger, estimated that the collision occurred while the bus was travelling at three to five miles per hour.  Bremner also testified that he did not see any of the passengers being thrown about or out of their seat during or after the collision.

**¶3**         At the initial ICA hearing, Karry neither objected to Bremner's description of the accident nor provided any contravening evidence about the accident.  Karry testified that he started feeling pain in his neck the day after the accident.  He stated that he started treatment with a chiropractor shortly after the pain began.  He did not notify Veolia about his pain and treatment, however, until over a month after the accident.  Karry testified that he received "several adjustments over several months" from a chiropractor, and he was no longer suffering neck pain.  He also testified that he previously suffered a similar neck injury from a vehicle accident in 2003.  Karry stated he received similar chiropractic treatment for that injury and had recovered.

**¶4**         Karry was treated by Dr. Dennis Goldberg, a chiropractor, who testified that orthopedic tests he performed on Karry after the accident found that Karry was suffering from pain or discomfort.  He also testified

that he was unaware of Karry's 2003 accident. Dr. Goldberg stated he believed to a reasonable degree of medical probability and certainty that the bus accident caused, contributed, or aggravated Karry's injury because:

> [A]ny time someone gets into an accident, whether it's . . . say, 4.5 miles per hour, the neck gets thrown back and forward or sideways in kind of a whiplash-type position. And there are, approximately, five Gs that are exerted on that cervical region. And that would be equated to somewhere around a jet-fighter pilot being launched off of an aircraft carrier. And that could disrupt and damage the ligamentous area of the cervical region and cause discomfort, pain, swelling, reduction of range of motion.

¶5        Veolia called Dr. Irwin Shapiro, a board-certified orthopedic surgeon, to testify about his medical records review of Karry's injury history and whether the bus accident caused Karry's most recent injury. Dr. Shapiro stated he believed it was not medically possible that Karry's injury was caused by the accident, particularly because of the force of impact, the weight of the bus, and the lack of reported symptoms in any other passenger. Dr. Shapiro also testified to familiarity with some of Karry's medical records showing Karry had suffered previous injuries. Dr. Shapiro stated he did not believe those previous injuries made it more probable that minor trauma could aggravate a preexisting injury.

¶6        The ALJ found that an accident had occurred and that Bremner's testimony about what took place was credible. The ALJ adopted Dr. Shapiro's opinions as "more probably true and correct." Accordingly, the ALJ denied Karry's claim as noncompensable.

## JURISDICTION AND STANDARD OF REVIEW

¶7        We have jurisdiction under Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.2 and 23-951.A (West 2015),[1] and Arizona Rule of Procedure for Special Actions 10. We defer to the ALJ's factual findings but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003). We consider the evidence in the light most favorable to upholding the award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

---

[1]        We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

**DISCUSSION**

¶8          Karry argues that the ALJ should not have denied his request to allow testimony from another doctor in addition to Dr. Goldberg. Karry contends that he was denied due process because this second doctor was not allowed to testify, although several "lay" witnesses for Veolia testified.

¶9          ICA hearings may be conducted "in any manner that will achieve substantial justice." A.R.S. § 23-941.F (West 2015); *see also Amey v. Indus. Comm'n*, 156 Ariz. 390, 392, 752 P.2d 43, 45 (App. 1988). Here, Karry requested the testimony of the second doctor because that doctor treated Karry and "administered steroids because of the pain" from the injury. The ALJ explained to Karry that the purpose of the hearing was to determine whether the bus accident caused Karry's injury and that any treatment he received could be "litigated at a different time" if he received a compensable award. As a result, the ALJ did not allow the second doctor to testify. We find no error in this limitation of evidence. *See Hughes v. Indus. Comm'n*, 188 Ariz. 150, 152, 933 P.2d 1218, 1220 (App. 1996) ("As a general rule, an administrative law judge may deny a timely subpoena request if the expected testimony would not be material or otherwise necessary.").

¶10          Karry next argues that he was not afforded sufficient time to prepare for cross-examination of Dr. Shapiro, in part because Dr. Shapiro's report was "untimely filed." Karry asserts that the ALJ "demanded" Veolia disclose Dr. Shapiro's medical records review report within two weeks of the initial ICA hearing. The record indicates that, although the ALJ expressed hope that Veolia would receive the report from Dr. Shapiro within a couple weeks of the initial hearing, no demand was made that the report be disclosed within two weeks of that hearing. Moreover, and irrespective of when the report was disclosed, Karry received a full opportunity to cross-examine Dr. Shapiro, consistent with his rights under Arizona law. *See Oberteiner v. Indus. Comm'n*, 161 Ariz. 547, 549, 779 P.2d 1286, 1288 (App. 1989) ("The right to cross-examination is fundamental and attaches when the [ICA] receives any testamentary or documentary evidence."). Karry has not therefore demonstrated he was prejudiced by the report's disclosure and admission.

¶11          Karry raises several other issues related to events that allegedly occurred off the record. No evidence related to these issues appears in the record, and Karry raises these issues for the first time with this court. Because it is the petitioner's burden to develop the factual record before the agency, we do not consider these newly raised issues. *See Kessen*

*v. Stewart*, 195 Ariz. 488, 493, ¶ 19, 990 P.2d 689, 694 (App. 1999). To the extent other arguments or issues are raised, Karry has waived them by not developing the arguments in accordance with the Arizona Rules of Civil Appellate Procedure. *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491 n.2, ¶ 6, 154 P.3d 391, 393 n.2 (App. 2007).

**CONCLUSION**

¶12 The denial of Karry's claim as noncompensable was supported by sufficient evidence. Accordingly, we affirm.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama